The first case for argument this morning is 21-2316 Blue Gentian v. Tristar. Mr. Hawes, whenever you're ready. Did I mispronounce your client's name? Well, no. That is actually correct, Your Honor. Okay. Please proceed. Good morning, Your Honors. May it please the Court. I want to start off with the point looking at how the context and then dive right into what we believe are some clearly erroneous factual findings that go to this Court's standard of review. This case is somewhat unusual for an inventorship dispute. If you look at this Court's cases such as Cartier-Hugh and Dana-Farber, most of the time these allegations of joint inventorship come up because the individuals have been working together for months or maybe a year and there's a question of, well, what came out of that? Here's this patent. Here's this patent. Here we have an alleged aside during a two-hour meeting that has become the basis for six different patents to have their inventorship challenged. I'd like to move from that to the specific findings made by the District Court and why those are clearly erroneous. If we move to the District Court's opinion, and I'm looking in the appendix here at appendix page 87, the appendix, the Court starts by analyzing and admitting that it's not looking, doing claim construction. So the Court comes up with its own idea of what's important in the technology here without doing claim construction and says it's a hose with three features and defies those in the middle of page 87. It has to have inner and outer tubes that are connected only at the ends. The outer tube has to be made of nylon or polyester and, importantly, the inner tube needs to be elastic and provide biasing force without the need for a spring. So those are the three characteristics of that tube. But the first finding of fact is very important here. So the District Court looks at that and says, I find that the 836 patent shows that Ragnar, who is the purported inventor... What are you reading on that page? I see the three features. Right above the three features. Without engaging claim construction. Gotcha. So the Court finds that the 836 patent corroborates and then below the three features, Your Honor, says, this prior knowledge corroborates Ragnar's testimony that he was prepared to and did, in fact, communicate this knowledge. So this is a key fact finding. It's the fact finding that underlies the lead analysis of the Court with regard to corroboration. But let's look at this. Is this your argument that there's not sufficient corroboration of communication of the idea? Well, that's certainly one of our arguments, Your Honor, but we also argue that there are clear errors. Could you tell us where the clear errors are? Yes. The 836 patent does not disclose that host. So the District Court does not cite anything in the 836 patent. And if you look at the red brief and their citations, you'll find there's no support there either. So in the red brief, page 6, we have this string of citations. This is about three-quarters of the way down in the red brief, page 6. I want to make sure I don't get ahead of everyone, but it says and states that including a metal spring is optional. So this is where they run through the three parts. And there are a lot of citations here, and I don't really have an option but to go through them with you, but none of them support this factual finding. Just a side question. I don't want to get you off point, but you also mentioned in the context of this claim construction, I understood one of your arguments to be that the District Court should be able to provide a claim construction. That's right, Your Honor. You asked for a claim construction. You did not provide your own way of construction of these cases, of these terms, right? We actually not only provided constructions. We briefed it. Our Markman briefs are in the record, Your Honor. We had a hearing on it. That was for infringement and validity. How about for inventorship? Well, but some of those terms, as indicated in the briefs, are relevant to inventorship, specifically the claims. So if you look at the – I guess the concern we have, perhaps, if I'm interpreting the questions correctly, is that, as I understand it, you never tried to tie together any specifically proposed construction of any specific term and how that proposed construction would actually impact how you think about whether or not Ragnar is a joint inventor here for these claims. So, Your Honor, to what extent did that happen? I understand there was a Markman brief, but here in the context of the joint inventorship fight, where and how did you say, here's what this particular claim term means, here's why you need to understand the claim terms mean this, and why this shows and proves my story that it was all variety and nothing to do with Ragnar. So, Your Honor, so I'll turn you initially to the claim and then walk through – so I'll start with the claim language and walk through that, okay? Well, my only question is, am I right to say that what I just summarized did not occur below at the district court level? I think you're incorrect, Your Honor, respectfully. Okay, where is it? In the record that says, hey, here's a particular claim limitation in this claim. Here's my proposed construction. Here's why that proposed construction is correct. Here's why that correct proposed construction defeats Ragnar's argument that he is a co-inventor of this claim. So I would turn you to the post-hearing brief, Your Honor, and that is in the record at page 6723. Which volume is that? I believe that is volume 2. Volume 2? Yeah. Volume 2. And it's page 6723. Okay. So if you look at page 6728, which is the next page in the appendix, and you look at where we're arguing that, you know, Gary Ragnar's teachings to Mr. Berardi were insufficient, and we point to the actual claims, and specifically we point to the language in the claims and why those claims require the radial and longitudinal expansion of that inner elastic. And the reason that's important, Your Honor, is because even under the allegations of Mr. Ragnar, the inner surgical tube never had water in it, any fluid. So it would not expand radially. So we specifically argued, look, the claims, as properly interpreted, require that. And so if you're going to determine whether Mr. Ragnar's contribution is significant relative to the claims, you've got to compare the construction of that term to what was discerned. Sure, but Mr. Ragnar doesn't need to teach every single element of this claim in order to be a drawing measure. Completely. And as I understand it, your side never disputed that the three features that the district court honed in on are in fact incorporated in the claim. Respectfully, Your Honor, the question under the law, under this Court's law, is... Well, can we just get to that question, the point I just asked? Your side never disputed that the three points, the three key features the district court honed in on are in fact necessary elements to the claims. I do not think, actually, that they are necessary elements, Your Honor. They're not in the claims? No, they are consistent with the claims. None of the claims have this language about without to provide bias enforcement. I'm confused right now because I don't remember in the briefing whoever saying the district court botched it because he was looking at an inner tube and an outer tube being connected only at the ends, and that's not part of my claims. That is part of your claims. It is part of the claims. Yes, that one is. How about an outer tube with a fabric cover? Some of the claims have that, others do not. Okay, well, then that's in there, too. Then what about the idea of an inner elastic tube inside the hose that provides the biasing force to retract the hose? So, yes to the extent, to one extent, but no to another. There's two parts to what you've just said. Okay, I don't remember in the briefing you disputing that that is a feature that's in at least some of the claims in the patent. So, in our blue brief, Your Honor, turning to the blue brief, we identify that... Before you start telling me a story, is it yes or no that, yes, you did dispute that feature? We did identify that that feature is not concomitant with the claims because this court's law says you have to give a significant contribution relative to the claim scope. So, if the claim scope is this big, even if the contribution is within this claim scope, the analysis this court requires, you have to compare the contribution to the claim scope. So, are you saying that element, nobody should have relied on that because that was irrelevant to this invention? We're saying it was insignificant relative to the full scope of the invention. Was it an element that you relied on during the patent prosecution to distinguish the claims away from the Ragnar 527 patent? With regard to one... All three of these features. No, Your Honor, I don't believe it's true for all three of these features. It is true for one of the features, the fabric is used to distinguish, and it's only true for one of the prosecutions. So, again, we're dealing with six different patents here. And so, yeah, if you try to find a little bit here and a little bit there, but that does not mean that for each of these patents we have the required significant contribution for that patent's claims with regard to Mr. Ragnar's... But you also agree that you don't have to take each of these and each of these by itself doesn't have to demonstrate a substantial contribution. The judge referred to all three, right? The judge referred to a tube having all three features. Before you run out of time, let me turn you to the design patent, the two design patents here, because I really am struggling with what the invention, the decorative invention is here, and therefore you're disputing the district court's conclusion. But I think he didn't have that much to work with, and he, of course, had your client's testimony that, well, this just sort of showed up and I noticed it, and I got a... You know, there was no analysis of how he came to this and how he invented it. And then you've got this patent that I'm not sure what other than functionality exists in the patent. I'm having a hard time figuring out the 681. Right. So two things there, Your Honor. First, Mr. Berardi, who's clearly not a patent attorney, said, you know, my prototype, which is just one embodiment of the various utility patent claims, but, yeah, it looks like my prototype. But the fact that one embodiment looks like this does not mean that it is functional. And, of course, we didn't have the invalidity of the design patents at issue. I mean, design patents are for some, you know, contribution to the ornamental arts. Yes, Your Honor. And what is the contribution to the ornamental arts here? Because I see nothing but function here, that this design of the hose is based on just putting the hose together, and this is the result you get. In fact, that's what Mr. Berardi said in his testimony. He said that for his prototype. That's right, Your Honor. But, obviously, you could build a prototype within the scope of the claims in a different way. Is there anything ornamental here? I would, you know, I am... My first reaction is a hard no. I mean, this looks like a misuse of the design patent system. Well, it's also what he... I mean, his testimony that Judge Chen just referred to come up with the idea, that's the way the hose looks. And I mean, after the prototypes were made, that's the way it looks as a garden hose. That's right. And that's why I say, you know, his prototype looked this way. Okay. But that prototype is... Is there a design patent, an ornamental design that he's invented? If there are other ways that you could achieve the utility, yes, Your Honor. You know, the look of a particular embodiment can certainly be an ornamental design if there are other ways of achieving the same function that look different. And, of course, the district court didn't analyze any of this. What is this claim about, though? What's on this figure? Are you claiming there's a bunch of scrunchie stuff here, and each of them, it looks like the soles of shoes, and each of them is a little different in terms of size or shape, just a little. So are you relegated and left to this exact design? In other words, if there's another scrunchie hose and the designs aren't precisely this way, in terms of number, shape, or size. So, Your Honor, I can speak generally to this. This issue was not on appeal, and I will admit I did not read all the briefing that might have been in play about invalidity below since it did not get resolved. Well, I'm not showing invalidity. I'm just trying to discern what... I mean, we have to decide whether he was a co-inventor. I want to understand what it is you've invented. The rule, generally, is that we do a claim construction where we say the non-hatched portions of the figure in a design pattern, the ornamental, non-functionally required portions of that are the design, and then you look to a person, an ordinary consumer, to see whether or not that ordinary consumer, in comparing that to something else, would find it to be infringed. That's the scope of the claim in a design pattern. And there's no functionality associated with this? There's no... Functionality does not dictate this look. That's what's important in design patterns, is whether functionality dictates it. What dictates the look? I mean, the client just said, I saw it. And what dictates the look? Is it any creativity on the part of the... It's the particular... Is there any creativity on the part of your client as the inventor? Yes. I mean, he exercised creativity in choosing the particular materials that he used in his embodiment, which are not required by the claims. He could have used different materials. And those materials, when put together, give you a certain look. And so it was his work in putting those different materials together to achieve this look that would be the creativity for a design pattern. Do you know what is the status of the validity of the design patents in the district court? Was there motions pending with respect to invalidity? I know there were certainly invalidity contentions. I don't believe there was a summary judgment motion. And no decision yet. And there's certainly no decision on it, Your Honor. If you were to prevail on this appeal, would you expect that that invalidity dispute would get resolved in due course? Given that there are invalidity contentions, yes, Your Honor. I would certainly expect that. Can I just ask before we move on? I'm not sure if I fully understood your answer to Judge Chen's question about where you articulated the claim construction. I've had a chance to glance, but just glance at 67, 28, and 29. Do you there actually say what claim term, what the claim construction should be, and what a difference it makes to the inventorship? So, Your Honor, and I'm looking specifically at footnote 2. Okay. And there we do discuss the specific terms in the 941 patent claims. You see in the first sentence we identify specific terms. I see that. And then in the second position, we compare that to what Mr. Ragner's testimony was. We say, you know, Mr. Ragner does not even argue he disclosed such a limitation, Mr. Berardi, and then we compare it. You know, instead, he argues he disclosed. So, and the valley court is, when I was talking about does not... But how, where does this put the district court on notice that what you're saying is, hey, you need to follow the Federal Circuit's law and construe claims because it makes a difference and here's what our construction is? Well, Your Honor, I mean, the district court had before it the construction, the proposed constructions of these terms. And we compared and said these constructions, our constructions don't match this valley court, which was the testimony of Mr. Ragner. So, you know, we told the district court these things are different. And the district court never addressed it. This ties back to your then pending briefing on claim construction. Yes, which does address these terms, Your Honor. Although this footnote doesn't actually reference that construction. Well, I mean, at this time, there was no construction, Your Honor. There were briefings, so we didn't know exactly what the construction would be. But we did identify these are the terms that you need to compare with Mr. Ragner's testimony, specifically his testimony about the valley court. We said that's not the claimed invention. And to analyze that, whatever constructions the district court came up with, which, of course, the district court is independent of the party's proposals, it needed to compare to Mr. Ragner's testimony and we pointed to the exact testimony that needed to be compared. So I think we did fairly put the district court on notice. If the district court had said, in response to claim construction, I'm just, I don't think there's a need for construction. I'm just adopting the plain and ordinary meaning. Would you have any basis, would you have a specific basis to say plain and ordinary meaning is inconsistent with what we think the construction should have been and that our construction would result is going to affect the analysis on inventorship of these three elements? Yes, Your Honor. And that goes to when I talked about the radial expansion requirement and our construction of that, that's, again, it's at the very end of the claim that we put on the inside of the brief. So that's the substantial... But where is that here? Where are you talking about that here? Is that footnote two? So we say in footnote two, you see where we talk about the expanded condition and it requires the outer fabric to be longer and have a larger radius. Do you see that? So we were talking about that radial expansion. I know I'm way over time, Your Honor, I do want to emphasize there's nothing in that 836 patent. I couldn't get to it, but that is a clearly erroneous factual finding. That 836 patent does not disclose what the district court said. I could run through it all, but I know I don't have time, so I'll leave it. Thank you, Your Honor. You'll be under time because we asked you a number of questions. We'll restore some of your time. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. I'd like to address a few points. I guess I'll start with corroboration of communication, as appellants call it, perhaps hit on the collaboration requirement and then also address the claim construction issues that were raised this morning. Starting with the corroboration argument, I heard appellants say that the district court determined corroboration based solely on the 836 patent. While the 836 patent, we do contend, teaches all three elements, of course. The district court, and you can see this in Appendix 94, ruled not just on the 836 patent, but stated, after considering all pertinent evidence, the court finds that Ragner's testimony is adequately corroborated both by physical and circumstantial evidence. And then they go on. Of course, an inventor's testimony while standing alone must be corroborated. Whether that corroboration is sufficient is determined under this rule of reason analysis. And what that means is, you know, you don't need corroboration or independent proof of the fact itself. You need something that shows some independent evidence showing that as a whole, you know, the inventor's testimony is credible. You don't need an over-the-shoulder observer. You don't need a particular, you don't need corroboration of each particular fact. So I understand where you're going. So are you now agreeing with the other side that at least as to the legal point of corroboration, Mr. Ragner needed to prove he had corroborating evidence not only for conception of these three features, but also for communicating those three features to Mr. Berardi? I guess what I would say is that I think the... The brief seemed to hedge on that, so I couldn't tell. I'm sure, Your Honor. What was strange to me about the way that the appellants presented it was that they broke the two things. They broke conception and communication into two separate elements, which is, of course, the elements that were relevant for price with respect to derivation. What we're looking at here is a little bit different. I wouldn't disagree that there has to be some sort of collaboration. There has to be some way that what Ragner knew got into the patents of Berardi. And our contention, of course, is that that was communicated by Ragner at the meeting. There were also documents that communicated that information at the meeting. But do you agree that it would be wrong for a court to rely solely on Mr. Berardi's own... or Mr. Ragner's own testimony that he, in fact, communicated all these things to Mr. Berardi? If there was... Well, I would say one thing. One, there is not the need for a... corroboration or independent proof of every fact itself. Two, I would say that we have even direct evidence of the communication of most of these elements for sure. I think that the element that's most in question is whether there was corroboration of the elastic tube that provides a retracting force without a spring. But if it's helpful to the court, I can go through what the evidence was and what the circumstantial evidence was at the time. During the meeting, leading up to the meeting, and including after the meeting, of course, when Berardi went out and bought all the material shortly after the meeting to go and build the hose. Is your answer to my question yes? Mr. Ragner would need some kind of corroborating evidence to support his assertion that he communicated those features to Mr. Berardi? My answer... Sorry for interrupting. My answer with respect to at least the first two components would be no, only because there was physical evidence at the meeting. With respect to the third component, the elastic hose that retracts without the need for a spring, I would say there, there was not... There is need for corroboration of Ragner's testimony about that. And was there corroboration? There indeed was. So there was the 836 patent, of course, leading in. There was the meeting itself, where there's agreement about the topics that were discussed, the reason for the meeting. Mr. Berardi himself said that Ragner was free-flowing with information and said that Ragner talked about the time when Ragner dusted off his ideas and started making his prototypes. Of course, one of those early prototypes was prototype 2, which was the prototype that Ragner says they were talking about when they talked about whether the spring could be removed from that hose. And then, of course, going on at the end, at the end we have Berardi going right out and buying components to make a hose with no spring. So, again, I think what the case law tells us is that you need an overall assessment of the credibility of the proposed inventor's testimony looking at the evaluation of all pertinent evidence so a sound determination of credibility of the alleged inventor's story can be reached. Can I ask you, your friend started off by saying that this is an unusual kind of inventorship case because typically you have two scientists or whatever working together for years and then it becomes a dispute. His suggestion was obviously that makes this case different and weaker. I, maybe reading between the lines or getting a sense for what the district court said, I understood he took that kind of and read it the opposite way where here you have a circumstance where you've got a person skilled in the art who's been working in this field and doing this business for 10, 20 years and developed the business and then on the other hand you have someone who's just new to the field and not expert and so he was influenced by that as the alternate scenario to the typical situation. Just wondering if you had a comment on that. Do you agree that that was sort of the background noise that the district court really felt was somewhat compelling? I agree that's surely one of the things that the district court found compelling and I think that we see in the cases, for instance, Ethicon and Cardiac AQ where relative experience of the two potential inventors is something that can be considered in determining whether testimony is corroborated. I would disagree with the appellant's argument that this is, you know, I don't know what percentage of the time a case is like ours and what percentage of the time you have two people working together in a lab for two years but we have, for instance, the Inri Verhof case where there was basically a chance encounter and a brief communication answering a question and that was enough for joint inventorship. And that was the case where a named inventor took his dog to the veterinarian, mentioned a problem with the harness for his dog and the vet suggested a configuration of a strap that might help and then that information from the vet was incorporated by the dog owners in their patent application and what the court said was that it would be paradoxical to regard Verhof as having solely conceived when he admits to appropriating Lam's freely given idea. And before your time runs out, we had a little discussion about the design patent which is a little challenging for all of us. So what are your comments? I mean, it seems like what the district court found co-inventorship here but relying really on functional elements and how is that right if by definition unless and until we find this patent invalid because it is functional, we've got to assume it is not functional or ornamental. I mean, maybe we do, maybe we don't, but let's start with that. Sure. And there was and is a dispute at the district court about the design patent and whether it's functional. But my understanding of what appellants have argued below is that the design patents cover a crumpled look. So basically like a scrunchie, right, but that's not attached at the end. I haven't seen any arguments by them below about how many pieces of crumple you need to see or some sort of detail like that. What about the district court's analysis? His analysis dealt with the brief elements he was looking at. Right. How is that not sort of just incorporating kind of a functional test into what is ostensibly not functional unless and until there's some analysis of this patent? Well, I think the question of separating functionality and the design here, I appreciate that question. But I think here what the court was going on and what was presented is the fact that there hasn't been any proposed construction of the design patent by appellants in connection with inventorship below or here. But I guess I would say that you could end up by chance with some sort of design that has a design element. I don't know that the way in which you come to determining a design for a patent is what drives whether you're entitled to the design patent or not. Would you say it's fair to say that to the extent the design was conceived of at all, the three Ragnar concepts or elements match the conception described by the main inventor? Yes, absolutely. So Ragnar contributed the ideas that resulted in Berardi's hose looking like the crumpled hose design it was. So Ragnar saw and then, excuse me, at the end, of course, Berardi saw, as you said, what the hose looked like from incorporating those three ideas that Ragnar gave him. And it happened to look like the hose that you see in his videos from after the meeting. And that is the hose that they then say they put into the design patent. Can I ask you about claim construction? Because I'm not sure I understand what happened here. It seems that the appellants repeatedly told the district judge they wanted claim construction for the utility patents. There was a claim construction hearing, not for purposes of inventorship, but some of the terms maybe overlap. And then we get to the opinion, and the opinion repeatedly goes out of its way to say I'm not doing claim construction. Is there ever any explanation from the district court as to why it's not doing claim construction? And wasn't it legal error to not do claim construction here? No, so going into the hearing, the judge said that if at the end claim construction was necessary, he would do it. So here, given what was argued to him, he determined that it wasn't necessary. And what did he tell us about why it was not necessary? And I think that if you look at the elements that were contributed by Ragner, Ragner's contributions don't depend on whether he contributed every detail of the invention. Does the district court say that? I don't know if the district court says he doesn't need to have contributed to every element, but that is indeed the rule of joint inventorship. If Ragner had contributed every element, then he would be a sole inventor, not a joint inventor. Do we know why the district court did not construe the claims? As you say, he said he would if he needed to. I think he told the parties you'd be hurt from further if he needs help. And then he very clearly tells us he's not construing the claims, but I'm not clear on why that is. I mean, I guess I don't know what was in the judge's head. I would say that either he determined that it wasn't necessary or, of course, appellants did not put into their post-trial briefing in any clear manner what the claims were that they sought to be construed, how they should be construed, or why that mattered to this. No, but your friend, we were pressing your friend on the real probative question, which is, is it your view that any of whatever claim constructions were proposed at some place in this proceeding, that there was a demonstration that the difference between those constructions and the one that applied for the district court would have been probative or dispositive of the issue of inventorship? No, I don't think there was any showing that those constructions as applied would have impacted the ruling on inventorship. Do you think there is? I mean, your friend pointed us to footnote 2 of that document and so forth. Is it your view, and I don't know, like Judge Stark, I didn't see the district court give us a lot of analysis about that, but is it your position, though, that to the extent there were any claim construction disputes, they were not probative of the questions of inventorship and the three elements? It wouldn't have affected the result or been germane to the result here? That's right, Your Honor. Let me maybe explain why for a moment. I think the appellants at page 26 of their gray brief say something about the court needed to require that the water goes through the inner tube. It's undisputed that that's how the X-hose works. The district court understood Berardi's patents to be claiming the X-hose, and Appendix 53 of the district court's opinion does suggest that he understands that the water goes through the hose. Now, what did Ragner contribute with respect to that? The judge didn't even require that Ragner contribute an inner hose where the water goes through it, despite understanding that the X-hose and the patents that claim the X-hose have water going through it. I think there was potentially another claim construction issue that the appellants have raised is this question of whether the two tubes are attached only at the ends. Indeed, in front of the district court, we can see this at Appendix 5557, also at 5559. There are photos of this at 9807 to 9809. I think the brief might say 9827 to 9829. But there, what was displayed to the court was the cover shifting back and forth across the cover of a Ragner prototype, shifting back and forth across that inner elastic layer. And then with respect to this question of whether the elastic that Ragner contributed would expand and contract, there's also no questions about that. For instance, there was the prototype that was displayed at the meeting. It expanded, it contracted. There's testimony talking about TPU. TPU was the elastic used in Process 17, the diagram shown at the meeting, that it's an extremely good elastic. And there's testimony that without the cover, the hose will expand out and blow up like a balloon. The whole purpose of that fabric cover is to keep that inner elastic tube from blowing up under the pressure of the water. I would also contend, frankly, that the court found that there were three key contributions, any one of those standing alone. I disagree with Appellant's assertion that only one or two of these elements made a difference in prosecution. The Berardi patents themselves allege that Ragner's prior Art 527 patent was distinguished because he described using a biasing spring to retract the hose. And in addition, the applicant agreed to amend the claims in prosecution to overcome the Ragner prior Art to specify that the outer tube was fabric and that the tubes are unattached to the ends as compared to bonded. So any one of these standing alone would be significant, but surely all three of them are. Thank you. Thank you. Mr. Hans, will we still have four minutes of rebuttal? Thank you, Your Honor. My colleague denied that the 836 patent binding was purely erroneous but didn't point to anything in the 836 patent that shows what the district court found. The district court found, and it's very clear about what it's finding and why it's important to corroboration, that a tube with these three features is disclosed in the 836 patent. It's not. And I know they cited many, many passages. What about the other items? Like, for example, prototype 2, at a minimum, discloses that inner elastic tube that's the biasing force, right? And then it also has the ends of the two tubes attached to each other. So respectfully, Your Honor— And the fabric cover is in all sorts of examples. So respectfully, Your Honor, the reason this is important is because on an appeal from a bench finding of this sort, this court looks at the findings, and if any of them are clearly erroneous, this court has said, it doesn't reweigh. Instead, if there's a clearly erroneous finding, and here it's the lead finding and it's the only finding where the district court said, this shows both conception and that it was communicated. And this finding is clearly erroneous. There is nothing in that 836 patent that shows a tube with those three features. There are two spots, and they're copy-paste in the 836 patent, and one of them's at the top of Column 11, that talk about the one situation without a spring. And it's where the cover has enough elasticity that you don't need the spring. So it is not in the context of separate outer or inner, and it is not in the context of having the elastic inner be what causes the spring not to be needed. There is simply no disclosure in the 836 patent, and the district court relied on it. And this court has said that this is not a jury situation, right, where we're just looking for substantial evidence. This is a situation where we're reviewing findings of fact and conclusions. And here we have a situation where the lead finding of fact, and the one that the district court said, this shows corroboration, is clearly erroneous. And for that reason, we respectfully request that, at minimum, this court should remand for the district court to reweigh whether the rule of reason that applies to corroboration, where you look at all the evidence, applies. The last thing, she mentioned the 836 when she was telling us what the corroboration was. She also mentioned the reason for the meeting. And I'd like to go straight to that and give you one other citation in the record that I think is important with regard to that. And that's at page 7432 in the record. And this is the business plan, which was submitted and was, you know, basically what they were discussing, whether there was going to be an investment in view of this business plan. Business plan. Sorry, your Honor. So it's 7432 in the competitive analysis portion, the page of the business plan. The first mention of the microhose. And that's the one that we all know was the focus of this meeting. Whether there was an aside or not, this was the focus of the meeting. The first sentence says, it uses an internal biasing spring and then gives four functions for that spring. It extends, it retracts, it prevents kinking, and it protects the hose from rain. Where? So if anything, the reason for the meeting completely mitigates against any reason why there's corroboration that there was communication of something different. Right? Ragnar was there to sell his microhose. His microhose business plan says it's all about the spring. What was said at the meeting just seems fundamentally factual and the district court saw the testimony of all the witnesses. How could we possibly find that that's clear? Are you making credibility determinations about, you know, who was reliable as to what happened at the meeting? Are you really asking us to reverse that? I'm asking you to find a finding with regard to the 836 patent was a clear error and that the district court, when you reverse a finding with regard to clear error, needs to look at the whole evidence and that this court doesn't reweigh it. They send it back to the district court to look at the evidence as a whole and determine whether, given the correction of the clear error, the district court, not this court, would weigh the entirety under the rule of reason and come to a different conclusion or the same conclusion. What do you say about the juxtaposition of Mr. Berardi after the meeting, hours after the meeting, running off to Home Depot and making something that looked very much like Mr. Berardi's prototype 2? I understand prototype 2 did, in fact, have a wire coil, but it seems like Berardi, who is not an engineer like Ragnar, went out and made something immediately after the meeting that very much looks like prototype 2 with an inter-elastic tube, some cord, and isn't that enough of a circumstantial evidence to suggest that, yeah, Ragnar did, in fact, communicate to Berardi the idea that you don't necessarily need a wire coil. You can just rely on an inter-elastic cord, a la prototype 2. Your Honor, that may be what the district court decides once it reconsiders this issue without the finding of fact that it made, but we don't know. Well, he describes that right here in the opinion, doesn't he? Yes. I'm not disagreeing, Your Honor, that for the district court, that weighed on the side of corroboration. Right. This is at 87 to 88 where he said this is so interesting that Mr. Berardi's first prototype didn't look like the ultimate claimed invention where you had an inner hollow tube, elastic tube, but it was the very inter-elastic cord that was the same thing that Ragnar had in Ragnar's prototype 2, and the fact that this Berardi went and did that hours after the meeting suggests that, yeah, something got communicated about prototype 2 and about the need for, you know, you can do the biasing through an elastic cord. You're 100% right. That's what the district court said? So why can't we just say, well, you know, that's a pure fact finding, and it seems like the story fits together, and that's corroborating evidence. And I'll just add that, you know, you pointed us fairly to page 87, and that one paragraph about the 836 being the be-all and end-all and virtually the most important or the only thing the district court relied on, but what you and Judge Chen have been talking about follows immediately under the furthermore. They are both important factors for the district court, and all I said about this one was it was the lead one. It's the first one he talks about. So the issue here is whether this court, having found the lead factor that he used to support his conclusion to be, if you do, clearly erroneous, whether this court would then re-weigh for corroboration. Corroboration is a rule of reason analysis where you look at the evidence as a whole, and we don't know whether the district court, looking at the evidence as a whole, given that it made a clearly erroneous factual finding, would come to the same conclusion. And this court has said it doesn't. You suggested, I think, that we have no discretion if we find that lead finding to be clearly erroneous that we must vacate and remand. Where have we said that, that a single clearly erroneous fact finding would do that? So first of all, it's not any fact finding. It has to be a fact finding that is linked to the conclusion that's on appeal. So if the court had made some error in the background. So this one is specifically linked, and that's the last. So what case would say we have to send it back upon finding that? I believe it's the case that says you don't re-weigh, but let me see if I can find that case for you, Your Honor. It's cited in your brief? I believe it is, yes. All right. We've expired our time. Thank you, Your Honor.